The opinion of the Court was delivered by
Glover, J.
The first ground of appeal submits, “ that the words laid in the 7th count are not actionable in themselves and are not so explained by the colloquium and averments as to be made actionable.” Words which do not in express terms charge a crime may be actionable if used in such manner as to convey the imputation of crime. The construction of slanderous words depends upon the understanding of those who heard them. It is their popular, and not their legal, technical import which furnishes a rule for ascertaining their meaning: otherwise the most *432 licentious indulgence would be extended to a slanderer who should clothe his defamation in studied phrases and equivocal, language. (Sawyer ads. Eifert, 2 N. & McC. 511; Davis vs. Johnson, 2 Bail. 579.) In a late case, Lord Denman has very clearly expressed the true rule which should govern the construction of words used in a double sense : — “ The question in an action for words is, not what the party using them considered their meaning by any secret reservation in his own mind, but what he meant to have understood as their meaning by the party to whom he uttered them.” (Read vs. Ambridge, 6 C. & P. 308.) Nor should he be protected by a construction which would give him the benefit of the mildest sense in which the words might be understood, but their reasonable import as understood by those to whom they are addressed will govern the Court and jury in their interpretation. (Davis vs. Davis, 2 N. & McC. 81; Burges vs. Boucher, 8 Mod. 240.)
It is not always, therefore, the mode of expression which may be ádopted that renders words actionable per se, but the reasonable construction which hearers put upon their usual and popular import. Protection should not be extended to him who imputes crime under a vague expression used to injure another, whilst he is shielded from punishment by his own artifice. (Hunt vs. Algor, 6 C. & P. 245.)
Whether the words alleged in the 7th count were actionable by themselves was properly submitted to the jury, and after they have passed upon them, the Court will construe them in that sense which will support the verdict. The whole conversation with Hays is detailed with proper inuendoes, and the language is not so vague as to convey the double meaning of felony or trespass, nor was it so understood by those to whom Gunter spoke: — That Marshall had his hog shut up in a pen — had altered the mark, and that his negroes had cleaned it, were words significant of the speaker’s meaning and of the sense which he intended his language should convey. Hayes’s evidence sustained the plaintiff’s allegations and inuendoes, and the conclusion of the jury removes any doubt of vagueness in the ex *433 pression of rvhich the defendant desired to avail himself, and as he could have offered evidence, under his plea, to show that the words were used in a different and qualified sense, it is too late, after verdict, to urge a different meaning from that which the jury has found, and which the Court is bound to adopt. (Stark. 53.) No reference- to extrinsic circumstances was necessary to explain the language which Gunter used, and no averment of such circumstances was therefore required. A prefatory averment was superseded by the apparent additional import of the words used, and connecting the plaintiff with the defamatory words, it was enough that the matter should be set out with the proper inuendoes. Even if a direct averment be necessary, the omission of it must be pointed out by a special demurrer, and will be intended after verdict. (Stark. 385.)
This Court is, therefore, satisfied with the charge of the presiding Judge instructing the jury, — “ That the 7th count would suffice if the jury believed that the words would well carry the meaning that had been ascribed to them, and were understood and should have been understood by the witnesses according to that meaning.”
If this count be good, it will scarcely be necessary to dwell long on the 2d, 3d, and 4th grounds of appeal. The practice has long been settled in this State, that if any one of the counts supports the verdict, it shall stand good, notwithstanding all the rest be bad. Hogg ads. Wilson, 1 N. & McC. 216. And although the English rule is different in civil cases, Lord Mansfield, in Peake vs. Oldham, Cowp. 276, strongly expresses his disapprobation of it, and recommends a conformity to that adopted in England, in criminal causes.
The second, fourth and sixth counts depend upon the motives which influenced the defendant in the communication that he made to A. P. Yinson. The presumption that a party was actuated by malice in his communications affecting the character of others, may be rebutted by the occasion upon which they are made. These communications are either conditionally or absolutely privileged, the distinction depending upon the question *434 of malice. (Cooke’s Law of Def. 60.) A communication conditionally privileged, under which a party claims protection, loses its privilege upon proof of express malice. The words addressed by the defendant to A. P. Vinson conveyed clearly the charge of a crime; but he insists that it was made to forward the ends of justice, and was, therefore, a privileged communication. If he had shown, that his intention was bona fide to prosecute a felon, it was competent for him to do so ; but he offered no evidence, even of probable cause, for his suspicions, nor has he ever taken any other steps in the prosecution which he contemplated. The jury was properly instructed to inquire, “ Whether the defendant, when he rehearsed to Vinson thenarration he had given to Hayes and Edward Gunter, was really applying to a magistrate for a warrant.” It would be dangerous to give immunity to all communications to magistrates imputing crimes, and the presiding Judge very properly regarded that made by the defendant to A. P. Vinson as a privilege depending on the motives which influenced him.
Whether the 9th and 11th counts were proved was left to the jury, and, under the charge, this Court would have been satisfied with a finding on either.
In reply to the 8th count, the defendant might have relied upon his communication as an absolute privilege, and if he could have shown, that it was a bona fide accusation before a magistrate, supported by probable cause, his justification would have been complete, because the occasion existed and the matter complained of was pertinent. This, however, was a question for the jury, and was submitted to them with instructions on the law concerning probable cause. If there was no probable cause, there was no lawful occasion to speak the words, and no necessity to prove actual malice.
The 5th ground on which the defendant rests his motion for a new trial is, that the damages are excessive and unreasonable.
In such applications, the Court must look both to the facts and circumstances of each case, and will exercise, with great caution, the power of granting new trials, in cases of tort, which *435 appropriately belong to the jury, and over which their discretion should be uncontrolled, if they be indifferent between the parties. It would be a dangerous invasion of the province of a jury if the Court should undertake the supervision of their verdicts in all cases of torts, where the damages are ideal, and as to the amount of which, the same evidence will produce different conclusions on minds equally honest; and consequently, no satisfactory rule could be referred to for our government. It is better, therefore, and proper, that, in such cases, the verdict of a jury should not be disturbed unless for good cause, otherwise litigants may be invited to participate in a lottery in which the drawn numbers are, sometimes, all blanks.
The first case in which a new trial is reported to have been granted, in England, upon erroneous verdicts, is Wood vs. Gunston, in 1665 ; (Styles’s Rep. 462,) and this was for excessive damages for speaking slanderous words. The counsel for the plaintiff opposed it as a thing without precedent and of dangerous consequence : But the Court said, that “ When the jury by indirect dealings, might not be indifferent between the parties,” they would, in the exercise of a judicial discretion, grant a new trial.
In Huckle vs. Money, (2 Wils. 206,) Lord Camden declares, “ that it is very dangerous for the Judges to intermeddle in damages for torts. It must be a glaring case, indeed, of outrageous damages, and which all mankind at first blush must think so.” The character of the case prompted to the use of stronger language than his Lordship used on other occasions. It was for false imprisonment of the defendant on a general warrant of the Secretary of State, on suspicion of having printed the North Briton No. 45. Lord Mansfield, in one case, justified this exercise of judicial power on the ground, that passion, partiality or prejudice had influenced the jury. (Gilbert vs. Burtenshaw, 1 Cowp. 231.) Chambers vs. Robinson, (1 Str. 691,) is the first case where a new trial was granted merely for the excessiveness of the damages only; and the reason on which it was placed is, “ to give the defendant the chance of another jury,” which, *436 in the language of Lord Camden, “ would be a reason for a third.”
This Court will never exercise an arbitrary discretion. “ Where a jury, by indirect dealings, might not be indifferent between the parties,” or it shall appear that the damages assessed are “ flagrantly extravagant,” a new trial should be granted to promote the ends of justice.
It is not perceived that the defendant’s case is within the operation of this rule, and the motion is, therefore, dismissed.
O’Neall, Wardlaw, Frost, Withers and Whitner, JJ.„ concurred.

Motion dismissed.